THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES YETTKE, Defendant-Appellant.

Fourth District    No. 16103

Opinion filed April 23, 1981.

CRAVEN, J., dissenting.

Barnett, Ettinger, Glass, Berkson & Braverman, Ltd., of Chicago, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Gary J. Anderson and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Champaign County, the court entered judgment on the verdict finding defendant, Charles Yettke, guilty of the offenses of unlawful possession with intent to deliver more than 30 grams of a substance containing cocaine and the unlawful possession with intent to deliver more than 500 grams of a substance containing cannabis. (Ill. Rev. Stat. 1979, ch. 56½, pars. 1401, 705, respectively.) On January 29, 1980, defendant was sentenced to 10 years' imprisonment for the cocaine offense and 5 years for the cannabis offense, sentences to run concurrently.

On appeal defendant contends that the system of the Controlled Substances Act classifying the severity of cocaine offenses (Ill. Rev. Stat. 1979, ch. 56½, par. 1401) denies equal protection of laws. He also asserts that the trial court erred in (1) denying his motion to suppress evidence, (2) allowing the State to amend the information after the close of the case, (3) submitting to the jury verdict forms which precluded the jury from determining a material element of the case, and (4) refusing to instruct the

jury on included offenses. Finally, he maintains that regardless of the propriety of his conviction, he is entitled to a new sentencing hearing.

The principal issue in the case concerns the classification system for cocaine offenses. In relevant part, section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401) states:

"Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this Section with respect to:

(a) the following controlled substances and amounts, notwithstanding any of the provisions of subsections (b), (c), * * * is guilty of a Class X felony. The fine for violation of this subsection (a) shall not be more than $200,000;
   * * *

(2) 30 grams or more of *any substance containing cocaine*;
   * * *

(b) any other *amount of a controlled substance* classified in Schedules I or II which is a narcotic drug is guilty of a Class 2 felony. The fine for violation of this subsection (b) shall not be more than $25,000;

(c) any other *amount of a controlled substance* classified in Schedule I or II which is not a narcotic drug is guilty of a Class 3 felony. The fine for violation of this subsection (c) shall not be more than $20,000." (Emphasis added.)

A classification problem arises because section 401(a)(2), providing for a Class X felony, speaks of "any substance containing cocaine," while sections 401(b) and 401(c) providing for felonies with lesser penalties speak of the "amount of a controlled substance." Thus, a person manufacturing, delivering, or possessing with intent to deliver a very small amount of cocaine which becomes a part of another substance, the combined weight of which is only 30 grams, can be given a Class X sentence of not less than 6 years nor more than 30 years' imprisonment and a fine up to $200,000, while a person engaged in the same activities with a larger amount of cocaine not mixed with another substance and not having a weight of 30 grams would be punished much less severely. Imprisonment for a Class 2 felony provided for in section 401(b) would be for not less than 3 nor more than 7 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(5).) For a Class 3 felony provided for in section 401(c), the imprisonment would be for not less than 2 nor more than 5 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(6).) Defendant urges that this facet of the classification system enabling a greater punishment for one committing certain acts with a lesser weight of actual cocaine than the punishment given to one who may be doing so with a greater weight

of cocaine, denies equal protection of the law. He maintains that as he was charged under section 401(a)(2), the classification deprives him in that way.

■■ When cocaine is involved, the difference in punishment arising under section 401 has been widened by our recent decision in *People v. McCarty* (1981), 93 Ill. App. 3d 898, 418 N.E.2d 26. We held that the classification of cocaine as a "narcotic drug" violated the equal protection clauses of both the Federal and State constitutions. Accordingly, section 102(aa)(4) of the Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1102(aa)(4)), the section that defined cocaine as a narcotic, was severed from the Act because of its unconstitutionality. Therefore, for the purposes of the Act, cocaine is a schedule II, nonnarcotic drug; and the provisions of section 401(b) are not applicable because they apply only to narcotic drugs. The act of delivery or manufacture, or possession with the intent to deliver or manufacture cocaine is punishable only under sections 401(a) or 401(c) of the Act.

Even though *McCarty* magnified the classification problem in regard to cocaine offenses arising under section 401, defendant's attack on the section is much the same as that rejected by the supreme court in *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97. *Mayberry* was indicted for delivery of 200 or more grams of a substance containing a derivative of barbituric acid in violation of section 401(a)(5) of the Act. That section classified as a Class 1 felony the knowing manufacture or delivery, or possession with intent to do either, of 200 grams or more of a substance containing the foregoing. Section 401(d) provided that committing the foregoing acts with "any other amount of a controlled substance classified in Schedule III" to be a Class 3 felony. The controlled substance involved was listed in Schedule III. The supreme court stated:

> "Our legislature may have believed that any given amount of drug can be distributed to a greater number of people and thus have a greater potential to be harmful if it is mixed with another substance. While the soundness of that belief may be questionable, the determination is one for the legislature to make, and we cannot find that the classification schemes at issue have no reasonable basis. *Also, the defendants have not demonstrated that a classification scheme based upon the amount of the pure drug contained in a given substance would be feasible.* We therefore conclude that the classification schemes are not unconstitutional merely because they are based on the amount of the 'substance containing' the cannabis or controlled substance rather than upon the pure cannabis or controlled substance." (Emphasis added.) 63 Ill. 2d 1, 9-10, 345 N.E.2d 97, 101.

■■ Unlike the evidence in *Mayberry*, forensic scientists for the State

testified here that the amount of cocaine in another substance can feasibly be determined by testing. Defendant maintains that, accordingly, *Mayberry* is not controlling in this case. The contention is based on the theories that: (1) lack of ability to quantify the amount of a controlled substance in the substance containing it was the only reason a classification scheme based upon the amount of pure drug involved was deemed in *Mayberry* not to be feasible; and (2) the lack of feasibility of such a classification system was the reason the *Mayberry* court upheld the present classification system of section 401. We disagree with both theories.

We interpret the thrust of the previously quoted statement from *Mayberry* to be that the classification meets the reasonable basis requirement of *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407, referred to earlier in the opinion, because the legislature could reasonably have concluded that a given amount of cocaine when mixed with other substances has a greater potential for harm than when left in its pure state. The basis of this belief would be that mixing with other substances facilitates more sales to more people, thus causing more people to come under the harmful effects of the substance and, at the same time, enhancing the drug trade. We consider the italicized portion of the quote to be, at most, a secondary reason for the holding. Furthermore, we do not consider the lack of ability to measure the amount of pure drug in a substance to have been the only feasibility problem envisioned by the court. The court, having indicated that the total amount of a substance containing some controlled substance was of substantial significance, may have decided that basing punishment for a specified use of smaller quantities of contraband on both the amount of the total substance and the amount of the contraband would lack feasibility.

In any event, we conclude that the supreme court held the classification to have met the rational-basis test, and we do not deem the additional evidence here to have changed that. We consider *Mayberry* to be binding precedent and hold the classification of penalty under section 401 to be valid.

We note that the defendant has not argued that his cannabis conviction should be reversed because of the "substance containing" classification scheme of the Cannabis Control Act. (Ill. Rev. Stat. 1979, ch. 56½, pars. 704, 705.) Accordingly, this opinion does not address the classification scheme of the Cannabis Control Act.

■■ We find little merit in most of defendant's other contentions. He asserts that his motion to suppress evidence seized from his house and his person should have been allowed. These items were taken pursuant to a warrant authorizing the search of both. The verified complaint for the warrant was based upon information from an informant who claimed to have ingested cocaine on numerous occasions with defendant at his home.

It was sufficient to show probable cause for search of the home. (*People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26.) Nothing taken from defendant's person was used to obtain his conviction. The trial court was merely remedying a formal defect by permitting the State to amend the information after the close of the State's case. The amendment charged the defendant with possession with intent to deliver a substance containing more than 30 grams of cocaine while the original charge was that he possessed with intent to deliver more than 30 grams of cocaine. Neither ruling of the court came close to being reversible error.

The jury instructions that were given included the gram amounts of the contraband, which are an essential element of the offenses with which the defendant was charged. However, the verdict forms which were given to and returned by the jury were general verdict forms. They did not include the gram amounts. For example, one of the verdict forms returned by the jury stated:

"We, the jury, find the defendant, Charles D. Yettke, guilty of unlawful possession with the intent to deliver cannabis."

The defendant contends that by utilizing the weight amount in the jury instructions to impliedly fill in the weight amount on the verdict forms, the trial was subject to the same constitutional infirmity present in *People v. Dell* (1972), 52 Ill. 2d 393, 288 N.E.2d 459; namely, the defendant was deprived of his right to be found guilty, by a finding on each material element of the offense charged.

■■ However, in light of the recent supreme court opinion in *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027, *Dell* is not controlling. Here, unlike *Dell*, the jury instructions properly informed the jury of all the material elements of the offenses charged. Therefore, even though general verdicts were returned, the jury found the defendant guilty on each material element of the offense charged.

■■ The trial court properly refused to instruct the jury on included offenses involving gram amounts of contraband lighter than for the offenses with which defendant was charged and for which defendant was convicted. No evidence indicated any lighter amount of contraband was involved.

■■ Defendant's request for a new sentencing hearing is based upon his contention that the trial court failed to adequately specify its reasons for imposing the felony sentence as required by section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)) and also failed to grant defendant an opportunity to make a statement on his own behalf as required by section 5—4—1(a)(5) of that Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(a)(5)). Contrary to defendant's contention, the record indicates that the trial court set forth

that it was imposing the sentence because of defendant's past record which was enumerated and the severity of the present offenses. Where, as here, a defendant is given full opportunity to introduce evidence in mitigation, counsel for that defendant is given full opportunity to be heard at sentencing, and the defendant makes no request to speak, the failure of the court to tender that opportunity to the defendant is not reversible error. (*People v. Darling* (1977), 46 Ill. App. 3d 698, 361 N.E.2d 121.) No new sentencing hearing is required.

We affirm for the reasons stated.

Affirmed.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

As the portion of the *Mayberry* opinion that is quoted by the majority indicates, the defendants in *Mayberry* did not demonstrate that "a classification scheme based upon the amount of the pure drug contained in a given substance would be feasible." (63 Ill. 2d 1, 10, 345 N.E.2d 97, 101.) Clearly, this failure of proof was a factor in the court's conclusion that the classification scheme under attack had a reasonable basis.

Here, unlike the defendants in *Mayberry*, the defendant in this case has demonstrated that a classification scheme based upon the pure amount of the substance sought to be controlled (cocaine) is feasible. During cross-examination by the defense counsel, the forensic scientist testifying for the State explained that it was possible to quantify the amount of cocaine in a substance. He testified, however, that he did not perform a quantitative analysis on the substance containing cocaine in this case because he did not have the "techniques set up." The testimony of the forensic scientist for the State demonstrates that quantitative testing is feasible. Indeed, it is clear that quantitative tests are feasible and have been performed in the past. See *People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573.

Once it has been demonstrated that "a classification scheme based upon the amount of the pure drug contained in a given substance would be feasible" I cannot in good faith say that there is a reasonable basis for the classification scheme of section 401 of the Act with respect to that drug. This view is consistent with the language in *Mayberry*.

The classification scheme under attack here provides that if a defendant possesses with the intent to deliver a substance that weighs thirty or more grams, he is a Class X felon if the substance contains any amount of cocaine. Yet this same scheme provides that any person who

possesses up to thirty grams of pure cocaine is a Class 3 felon. If the amount of the drug can be ascertained then such classification is patently unreasonable.

As the supreme court in *Mayberry* indicated, the only imaginable justification for this ostensibly unfair classification system is that any given amount of cocaine can be distributed to a greater number of people if it is mixed with another substance and thus arguably have a greater potential to be harmful. However, if the defendant is charged with possession with intent to deliver cocaine, as the defendant is here, the above rationale is not applicable. Assuming that cocaine is not sold in its pure state, then the person with the largest amount of cocaine will be able to distribute it to the largest group of people. It is the amount of the cocaine that determines the potential quantity for distribution and harm rather than the amount of the substance with which it happens to be mixed. If, for some reason, the cocaine is to be distributed in its pure state, then everyone would agree that the person with the most cocaine poses the greatest threat to society. After all, it must be more harmful to ingest a drug in its pure form rather than in a diluted or mixed form.

Clearly, if a defendant has the intent to deliver, or for that matter manufacture, possession of 29 grams of cocaine is potentially more harmful to society than the possession of 29 grams of sugar mixed with one gram of cocaine. But yet, it is the defendant that possesses the latter amount that will be punished more severely. Surely this is an arbitrary classification scheme when, as the defendant here has demonstrated, it is possible for the State to determine the quantity of cocaine contained in a substance. Therefore, I conclude that there is no reasonable basis for a classification scheme based upon the amount of a *substance containing cocaine*. Accordingly, I would find that section 401(a)(2) of the Act violates the equal protection clause of the United States and Illinois constitutions. For this reason, I must dissent.