ALFRED SOLDANO, d/b/a Chesterfield Lounge, Plaintiff-Appellant, v. IL-LINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 83—2437

Opinion filed February 4, 1985.—Rehearing denied March 21, 1985.

Julius Lucius Echeles, of Chicago, and Edward A. Antonietti, of Antonietti & Culotta, of Calumet City, for appellant.

Neil·F. Hartigan, Attorney General, of Springfield (Karen Konieczny, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Plaintiff appeals an order of the circuit court affirming the revocation of his liquor license. On appeal, plaintiff contends (1) the order of revocation was based in part on a violation of an *ex post facto* law and the violation of this law cannot be used as ground for revocation, and (2) the finding that plaintiff allowed solicitation for prostitution is against the manifest weight of the evidence.

We affirm in part, and reverse in part and remand.

On October 15, 1982, plaintiff Alfred Soldano received notice of a hearing on a complaint issued by the Calumet City police department regarding liquor license violations. Plaintiff was charged with violations of sections 3—38 and 3—40 of the Calumet City Municipal Code, which prohibit solicitation of drinks and solicitation for prostitution. Plaintiff was also charged with violating sections 11—14, 11—15 and 11—17 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 11—14, 11—15 and 11—17). The Calumet City liquor commission held a hearing on the charges on November 12, 1982.

At the hearing, Officer John Wilkens testified he went to the Chesterfield Lounge on July 16, 1982, at about midnight to check for illegal activity. He was approached by Sharon DeMoff, who asked him if he would like to buy her a drink. At the request of DeMoff and the bartender, Patricia Coffel, Wilkens bought DeMoff three or four more drinks. DeMoff also asked Wilkens if he would like to buy her a bottle of champagne for $45. Wilkens bought the champagne, and DeMoff

and the bartender drank it. Wilkens asked DeMoff why the champagne was so expensive. DeMoff said Wilkens "would get a blowjob along with it" and she would do it when she was finished dancing on stage. Wilkens further testified that while he was seated at the bar, he observed a male employee directing females to sit by men who came into the bar.

Sharon DeMoff, called as a witness for plaintiff, testified she worked as a go-go dancer at the Chesterfield Lounge. Part of her job was to furnish conversation and company for male customers who bought her drinks. Employees were not allowed to date patrons and prostitution was not permitted at the lounge. Regarding her encounter with Wilkens, she testified he bought her two drinks and a bottle of champagne. Wilkens offered to buy her the cocktails. Before buying the champagne, Wilkens asked whether he would get anything with it. DeMoff told him she was not a prostitute and he was entitled to her conversation only.

Patricia Coffel, the bartender, testified Officer Wilkens was seated at the bar and motioned for DeMoff to sit by him. He ordered several cocktails and a bottle of champagne for DeMoff.

Diane Masterson, a friend of Coffel's, testified she was an occasional patron of the Chesterfield Lounge. On the evening in question, she was seated at the bar near Wilkens and heard him ask DeMoff to sit by him. Wilkens asked DeMoff if she wanted a drink, and DeMoff accepted. Masterson saw the bartender serve champagne to Wilkens and DeMoff. She heard half of the conversation between Wilkens and DeMoff and did not hear DeMoff offer to perform any sexual acts. Masterson had been at the lounge on previous occasions and never saw anyone engaged in sexual activity.

John Mundo testified he had worked at the lounge as manager for 10 years. During that time, no arrests had been made for prostitution. Women are hired as dancers and barmaids. They are instructed that no prostitution is permitted on the premises and that they cannot date customers. Employees could sit with customers only at the customers' request.

In his order revoking plaintiff's liquor license, the local liquor control commissioner of Calumet City found that "the license and/or its agent did allow soliciting for drinks and soliciting for prostitution in the licensed establishment." Plaintiff appealed to the State of Illinois Liquor Control Commission, and the order of revocation was affirmed. Plaintiff thereafter filed an action under the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*). The circuit court affirmed the decision of the Illinois Liquor Control Commis-

sion.

On appeal, plaintiff first contends the finding that solicitation for prostitution occurred on the licensed premises is against the manifest weight of the evidence. Plaintiff raises four points in support of his contention: (1) there is no evidence that DeMoff offered to perform an act within the purview of the prostitution statute; (2) no evidence was presented that DeMoff offered to perform such an act for money; (3) the testimony indicated there was no place in the lounge where sexual activity could take place; and (4) the licensee neither had knowledge of nor permitted prostitution on the premises.

Initially, we note that the findings of the local commissioner are presumed to be correct and will not be disturbed unless contrary to the manifest weight of the evidence. (*Roque v. Quern* (1980), 90 Ill. App. 3d 1015, 414 N.E.2d 161; *Show of Shows, Inc. v. Illinois Liquor Control Com.* (1967), 86 Ill. App. 2d 109, 230 N.E.2d 268.) It is the function of the commissioner to determine the credibility of witnesses and the weight accorded their testimony. *Starnawski v. License Appeal Com.* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102.

■ Regarding his first point, plaintiff argues that the local commissioner irrationally inferred that the term "blowjob" referred to an act prohibited by the prostitution statute. During oral argument, plaintiff's attorney stated the term has various connotations. For example, counsel argued, a blowjob could be considered either a service performed in a barber shop or a whispering in one's lover's ear.

Despite counsel's imaginative argument, we reject plaintiff's contention. During the hearing before the local commissioner, plaintiff's attorney used the term when questioning witnesses and stated, "[T]his act, I think we all know what we are talking about ***." Thus, we find plaintiff admitted that the phrase had the meaning ascribed to it by the local liquor control commissioner.

Assuming, *arguendo*, that the issue is properly before us, we find that the commissioner in this case did not irrationally infer that a blowjob referred to an act of prostitution. In *People v. Darling* (1977), 46 Ill. App. 3d 698, 361 N.E.2d 121, the evidence indicated a police officer offered $25 to defendant "for a straight blow job." Although the court did not address the same issue presented in this case, the court nonetheless equated the term "blow job" with an act of prostitution. (46 Ill. App. 3d 698, 700, 361 N.E.2d 121, 123.) Furthermore, in *People v. Brewer* (1983), 118 Ill. App. 3d 189, 454 N.E.2d 1023, the court addressed the issue of whether defendant's prior criminal offenses involving children were admissible to prove identity in an indecent liberties case. In holding the evidence admissible, the court

noted, "*** [distinction] as how the request for fellatio was phrased, i.e., 'blow job' *** [is] merely [a] meaningless distinction." (118 Ill. App. 3d 189, 194, 454 N.E.2d 1023, 1028.) Considering the aforementioned cases, we find no merit in defendant's argument.

■ In support of his second point, plaintiff contends that $45 is not an unreasonable amount to pay for champagne in a commercial establishment, and that in the absence of any evidence of the quality or brand purchased by Wilkens, there is no proof that DeMoff agreed to perform a sexual act for money. In our opinion, however, Officer Wilkens' testimony is sufficient to establish that the consideration to be paid for DeMoff's acts was included in the price of the champagne. The committee comments on section 11—14 of the Criminal Code of 1961, cited with approval in *S&F Corp. v. Bilandic* (1978), 62 Ill. App. 3d 193, 378 N.E.2d 1137, state that "criminal liability cannot be escaped by schemes which would avoid the direct payment of cash to the prostitute." (Ill. Ann. Stat., ch. 38, par. 11—14, Committee Comments, at 334 (Smith-Hurd 1979).) Thus, we find sufficient evidence that the act was to be performed for money.

■ Next, plaintiff argues that the lounge was not conducive to sexual activity because there were between 15 and 30 other patrons present and, according to Wilkens' testimony, the act was to take place at the bar after DeMoff had finished dancing. We find that this factor was one for consideration by the commission in determining credibility. The evidence does not negate the possibility of sexual activity and, in our opinion, is sufficient to support a finding that the commission's decision is not against the manifest weight of the evidence.

■ Plaintiff's final argument on this issue is that he neither knew of nor permitted prostitution on the premises and that his license therefore cannot be revoked on this basis. However, as noted in *Maldonado v. License Appeal Com.* (1981), 100 Ill. App. 3d 639, 640-41, 427 N.E.2d 225, 227:

> "A liquor license may be revoked for cause based on the conduct or actions of the licensee or the conduct or actions of others for whom he is deemed responsible or chargeable. (See *Childers*, 67 Ill. App. 2d 107, 113, 213 N.E.2d 595, 598.) Pursuant to section 3 of article X of the Liquor Control Act (Ill. Rev. Stat. 1975, ch. 43, par. 185), a licensee is accountable for the actions of his employees. The performance of work for another is prima facie evidence of employment and supports a presumption that the party is an employee, in the absence of evidence to the contrary."

The record in this case contains ample evidence that DeMoff was plaintiff's employee. Plaintiff never offered any contrary evidence. The Liquor Control Act does not condition the licensee's accountability on knowledge of his employee's actions, and, thus, revocation based on an employee's misconduct is not improper.

■ Plaintiff's second issue is based on that part of the finding regarding solicitation of drinks. The ordinance in effect at the time the acts took place prohibited solicitation of drinks by females only and was declared unconstitutional by the State of Illinois Liquor Control Commission. The amended ordinance under which plaintiff was charged was enacted by Calumet City on September 23, 1982, after the alleged act of solicitation took place. Plaintiff contends the amended ordinance cannot be applied to the acts in question without violating the prohibition of *ex post facto* legislation.

The *ex post facto* prohibition applies only to criminal legislation. (*Harris v. Irving* (1980), 90 Ill. App. 3d 56, 412 N.E.2d 976.) Hearings on liquor license violations are civil proceedings and therefore not subject to the constitutional provision.

Assuming, *arguendo*, that criminal legislation is involved, we find no merit to plaintiff's argument. In *Dobbert v. Florida* (1977), 432 U.S. 282, 292, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2298, the court, quoting *Beazell v. Ohio* (1925), 269 U.S. 167, 169-70, 70 L. Ed. 216, 217, 46 S. Ct. 68, 68, defined as *ex post facto* law:

> "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*."

However, where the crime, the punishment and the degree of proof necessary to establish guilt remain unaffected by an amended law, there is no violation of the *ex post facto* clause. *Dobert v. Florida* (1977), 432 U.S. 282, 53 L. Ed. 2d 344, 97 S. Ct. 2290.

■ In this case, the act of solicitation for drinks was not an innocent act at the time it was done. Furthermore, counsel has not argued that the amended ordinance changed the punishment imposed or deprived plaintiff of any defense which was available at the time the act was committed. The crime, punishment and proof remained unchanged, and we therefore find no violation of the *ex post facto* clause.

■ Although we hold that the findings of the commission were not against the manifest weight of the evidence, we agree with plaintiff's argument that the penalty of revocation of his license was too severe. The record establishes that plaintiff had operated his business for 40 years and previously had never been charged with license violations. Calumet City presented no evidence to refute these facts. In *Byrne v. Stern* (1981), 103 Ill. App. 3d 601, 431 N.E.2d 1073, the court, when faced with similar facts, found that revocation was an abuse of discretion. We therefore remand this case for reconsideration of the penalty imposed and the imposition of a less severe sanction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part, reversed in part; cause remanded.

CAMPBELL and BUCKLEY, JJ., concur.