THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
DEAN E. LUPTON, Defendant-Appellee.

Fifth District   No. 5—87—0726

Opinion filed December 2, 1988.

Gregory Grigsby, State's Attorney, of Taylorville (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas W. Lacy, of Taylorville, for appellee.

JUSTICE CALVO delivered the opinion of the court:

On July 25, 1987, Dean Lupton was arrested and charged in the circuit court of Christian County for the offenses of driving under the influence, driving while license revoked, and illegal transportation of alcohol. Lupton moved to quash the arrest on grounds that the officer had no probable cause to stop him. After an evidentiary hearing, the court granted the defendant's motion and dismissed the charges of driving under the influence and illegal transportation of alcohol. The State nol-prossed the remaining charge of driving while license revoked and filed this appeal.

At the hearing on Lupton's motion, Officer Rohn Burke of the Taylorville police department testified that on July 27, 1987, at about 2:45 a.m., he was traveling north on South Washington Street. While stopped at the intersection of Washington and Market, he observed Lupton approaching from the east toward the same intersection at a high rate of speed. As Lupton's pickup reached the intersection, he slammed on his brakes, sliding about 10 feet and screeching to a halt just past the stop sign and across the first line of a clearly marked crosswalk.

Burke turned on his red lights, turned left and pulled alongside Lupton's truck, which remained stopped at the intersection. Officer Burke instructed Lupton to pull over, but Lupton simply looked at Burke and drove on. Burke turned around and followed Lupton for approximately 1½ blocks, at which time Lupton pulled into an alleyway and stopped.

As Lupton got out of his truck and approached Burke, the officer noticed that he was having trouble ...king. Burke requested Lupton to produce his driver's license, and Lupton responded that he did not

have it with him. Officer Burke noticed the smell of alcohol on Lupton's breath and asked him to perform several field sobriety tests, which Lupton failed. Upon checking, Burke found that Lupton's driver's license had been suspended. Burke thereupon placed Lupton under arrest.

Lupton denied speeding or skidding into the intersection and maintained that he had stopped even with the stop sign, but acknowledged that he might have crossed into the crosswalk. Lupton also stated that the screeching noise was caused by worn brake shoes, not tires skidding on pavement. He further stated that he had not seen Burke's red lights and had not heard Burke tell him to pull over and denied having had anything to drink.

When asked as to his reasons for stopping Lupton, Burke responded that his main reason was "erratic driving," which he described as excessive speed and the improper stop. Based upon this, the court found that Officer Burke had stopped Lupton for erratic driving, not for speeding or entering into a crosswalk, and that even accepting Officer Burke's statements as true, Lupton's conduct did not constitute erratic driving. The court thereupon granted Lupton's motion and quashed the arrest.

■■ Generally, a police officer may stop a person where the officer believes, on the basis of articulable facts, that there is a substantial possibility that the individual has committed, is committing, or is about to commit a crime. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) This is a so-called *"Terry* stop."

On appeal, the State argues that Burke's testimony clearly indicates articulable facts justifying the stop and that the trial court erred in quashing the arrest. Specifically, the State argues that the trial court erred in not considering whether Lupton's excessive rate of speed or skidding into a crosswalk were themselves articulated facts justifying a stop, but only considering whether such factors constituted "erratic driving." Lupton argues that the trial court's decision should be affirmed because to reverse it would all but abandon the objective standard of "articulated facts" and would allow police officers to stop anyone whose conduct constituted erratic driving in the officer's own subjective view.

■ The trial court seems to have framed the issue as whether Lupton's conduct constituted "erratic driving." We believe the issue is not whether Lupton's conduct constituted erratic driving, but whether Burke had articulable facts justifying a *Terry* stop. Some confusion seems to have resulted from the use of the term "erratic driving" in several *Terry* stop cases. In *People v. Houldridge* (1983), 117 Ill. App.

3d 1059, 454 N.E.2d 769, the court stated that "erratic driving, such as weaving across a roadway or even weaving within the lane of traffic within which a vehicle is traveling, provides a sufficient basis for an investigatory stop." (*Houldridge*, 117 Ill. App. 3d at 1062, 454 N.E.2d at 771-72.) In *People v. Loucks* (1985), 135 Ill. App. 3d 530, 481 N.E.2d 1086, this court held that weaving within one's own lane of traffic, conduct we referred to as "erratic driving," justified a *Terry* stop. In *People v. Truman* (1986), 144 Ill. App. 3d 498, 494 N.E.2d 1210, the court held that defendant's conduct, which consisted of weaving across the center line and driving off the right shoulder, was sufficient to justify a *Terry* stop. Citing *Houldridge*, the court stated that "[p]ulling a car over constituted a legitimate *Terry* stop when the officer observes an individual driving erratically." (*Truman*, 144 Ill. App. 3d at 500, 494 N.E.2d at 1211.) In each of the above cases, the officer in question had articulable reasons to justify a *Terry* stop, reasons which the court broadly labeled as "erratic driving." The question in each case was not whether the defendant's conduct constituted "erratic driving," but whether the underlying conduct, which the court termed "erratic driving," constituted articulated reasons for the stop.

█ In this case, the trial court focused solely on whether the factors cited by Burke as reasons for stopping Lupton constituted "erratic driving." Upon comparing Lupton's conduct with the conduct of the defendants in *Houldridge* and *Truman*, the trial court concluded that conduct in those cases was "more erratic" than Lupton's conduct and that Lupton's conduct was not sufficiently erratic to justify a stop. The proper focus, however, should have been whether Burke had articulable reasons to believe that there was a substantial possibility that a crime was being committed, the standard for a *Terry* stop, regardless of whether such conduct was "erratic." "Erratic driving" is itself not an articulable reason justifying a *Terry* stop and we do not read the above-cited cases as holding so. We believe that the trial court erred in finding "erratic driving" as the reason for the stop. Burke had specific articulated reasons for stopping Lupton: approaching an intersection at an apparently excessive rate of speed and screeching to a halt, conduct which Burke described as "erratic driving" and an "improper stop." The trial court seems to have viewed the term "erratic driving" itself as a reason separate and distinct from the reasons of apparent speeding and the screeching halt, when in fact Burke was only using the term "erratic driving" to describe the underlying conduct. We find that Officer Burke had articulable reasons to believe that there was a substantial possibility that Lupton

was driving under the influence and that the trial court's decision quashing the arrest was in error.

The judgment of the circuit court of Christian County is reversed and remanded for further proceedings.

Reversed and remanded.

HARRISON, P.J., and WELCH, J., concur.